IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD JAMES JOSE<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Civ. No. 16-00072 JMS-KJM<br><br>ORDER AFFIRMING THE SOCIAL SECURITY ADMINISTRATION'S DENIAL OF BENEFITS TO PLAINTIFF RONALD JAMES JOSE |

## ORDER AFFIRMING THE SOCIAL SECURITY ADMINISTRATION'S DENIAL OF BENEFITS TO PLAINTIFF RONALD JAMES JOSE

## I. INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner," or "Defendant"). Ronald James Jose ("Jose" or "Plaintiff") appeals Defendant's adoption of Administrative Law Judge Jennifer M. Horne's ("ALJ Horne") September 25, 2014 decision finding Plaintiff not disabled under the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f (the "September 25 Decision"). Plaintiff argues that the September 25 Decision must be overturned because it is not based on substantial evidence and the record is incomplete. Based

1

on the following, the court AFFIRMS the Commissioner's denial of benefits to

Plaintiff because the September 25 Decision is supported by substantial evidence

and ALJ Horne did not breach any duty to further develop the record.

## II. BACKGROUND

### A.   Factual Background

Plaintiff, born in 1958, worked as a heavy machine operator and truck

driver from 1975 through 2011.  Admin. R. ("AR") at 44, 77, 143-45, ECF No. 20.

At the end of 2011, Plaintiff was laid off and then began taking care of his wife,

who passed away from cancer in 2012.  *Id.* at 46-47.

Plaintiff filed for Social Security and Disability Insurance benefits on

June 29, 2012, *id.* at 134-42, alleging disability since January 15, 2012, *id.* at 77.

His claim was denied twice -- once on January 24, 2013, and again upon

reconsideration on December 3, 2013.  *Id.* at 76-109.  On December 20, 2013,

Plaintiff filed a request for a hearing.  *Id.* at 110.  A hearing was conducted on

April 14, 2014, before ALJ Horne, in which Plaintiff and vocational expert Harlan

S. Stock testified.  *Id.* at 23.  Including the information summarized above, the

evidence before ALJ Horne relevant to this appeal includes the following:

//

//

2

### 1.    *Plaintiff's Testimony and Statements*

Plaintiff testified that he worked as a heavy machine operator and truck driver, *id.* at 44, until he was laid off in 2011 because his employer "sent the machines back to Kauai," *id.* at 46.  At that point, he began caring for his wife, who had cancer, until she passed away in 2012.  *Id.* at 46-47.  He testified that he could not return to his old jobs "since [his] back started hurting."  *Id.* at 49.

Plaintiff admitted that, as of January 2013, he could walk for half a mile and lift 100 pounds.  *Id.*  However, his back got worse five months before his April 2014 hearing, and he no longer had the same ability.  *Id.* at 50.  The pain manifested between his hip and pelvis on his left side, reaching down his left leg.  *Id.* at 53.

Plaintiff testified that the pain is not present all the time, but hits him "all of a sudden" after he stands and walks.  *Id.*  This has led to his use of a cane, which allows him to "get little bit relief [sic]."  *Id.* at 54.  He further testified that he can stand for about 10 or 20 minutes, walk for about 10 minutes, and lift 20 pounds.  *Id.* at 54-55.  He cooks, shops, bathes, dresses, and shaves on his own, and takes his grandsons to go shooting.  *Id.* at 56-60.

//

//

3

### 2. *Dr. Joseph Bratton's Psychological Evaluation*

Dr. Joseph Bratton conducted a psychological evaluation of Plaintiff on November 25, 2013. *Id.* at 408. Generally, Dr. Bratton observed that Plaintiff "seemed physically capable, showing no obvious gross difficulties in ambulating while here" but "his handwriting was horrible, suggesting some nerve/brain damage." *Id.* at 410. Additionally, he was "always polite and cooperative" and his thoughts "seemed logical and linear, with no sign of thought disorder; no delusional thinking." *Id.*

After administering several psychological tests, Dr. Bratton concluded that Plaintiff: "could understand and yet not recall mostly oral instructions," "could not currently attend a low stress job site," "could not work with coworkers and a supervisor, with limited contact," and "could not presently adapt to the normal workplace psychological requirements." *Id.* at 412-13.

## B. Procedural Background

On September 25, 2014, ALJ Horne issued her decision finding Plaintiff not disabled. *Id.* at 23-31. The Appeals Council subsequently rejected Plaintiff's request to review the September 25 decision, and the September 25 decision became the final decision of the Commissioner on December 18, 2015. *Id.* at 1-4.

4

On February 18, 2016, Plaintiff filed his Complaint seeking judicial review of the September 25 decision.  Compl., ECF No. 1.  On July 20, 2016, Plaintiff filed his Opening Brief, and on August 29, 2016, Defendant filed its Answering Brief.  Pl.'s Br., ECF No. 23; Def.'s Br., ECF No. 26.  Plaintiff did not file a Reply Brief.

A hearing was held on October 11, 2016.  Supplemental letter briefing was provided to the court on October 17, 2016.  Pl.'s Supp. Br., ECF No. 28; Def.'s Supp. Br., ECF No. 29.

### III.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act.  *See* 42 U.S.C. § 405(g).  In reviewing findings of fact with respect with to such determinations, the court must uphold the Commissioner's decision, made through an ALJ, "unless it is based on legal error or is not supported by substantial evidence."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)).  Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400

F.3d 676, 679 (9th Cir. 2007) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

Cir. 1989)).  With that said, however, "a reviewing court must consider the entire

record as a whole and may not affirm simply by isolating a 'specific quantum of

supporting evidence.'" *Ryan*, 528 F.3d at 1198 (quoting *Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## IV. <u>DISCUSSION</u>

Disability insurance benefits are available under Title II of the Social

Security Act when an eligible claimant is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is disabled

only if his impairments are of such severity that he is unable to do his previous

work, and cannot, considering his age, education, and work experience, engage in

any other substantial gainful activity existing in the national economy.  *Id.*

§ 423(d)(2)(A).

The Social Security Administration has established a five-step

sequential analysis to assess disability claims, which asks:

> (1) Is the claimant presently working in a substantially gainful
> activity?  If yes, the claimant is "not disabled."
> (2) Is the claimant's impairment severe?  If no, the claimant is
> "not disabled."

6

> (3) Does the impairment "meet or equal" one of a list of
> specific impairments described in the regulations?  If yes, the
> claimant is "disabled."
> (4) Is the claimant able to do any work that he or she has done
> in the past?  If yes, the claimant is "not disabled."
> (5) Is the claimant able to do any other work?  If yes, the
> claimant is "not disabled."

*See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Id.* at 1098.  If the claimant reaches step five, the burden shifts to the Commissioner.  *Id.*

ALJ Horne's September 25 Decision found that Plaintiff: (1) was not engaged in a substantial gainful activity; (2) had three severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder, and obesity; (3) did not have an impairment meeting one of the list of specific impairments described in the regulations; and (4) was unable to perform any past relevant work.  AR at 25-29.  Thus, Plaintiff survived steps one through four, shifting the burden to the Commissioner.  ALJ Horne further found that Plaintiff failed at step five, as the Commissioner established that there were jobs existing in significant numbers in the national economy that Plaintiff could perform given Plaintiff's residual functional capacity ("RFC").  *Id.* at 30.

7

Plaintiff now argues that ALJ Horne erroneously: (A) excluded limitations derived from his diabetes and use of a cane when determining his RFC; (B) rejected the opinion of Dr. Bratton; (C) failed to consider Plaintiff's prior work record when determining his credibility; and (D) failed to meet her duty to Plaintiff by not informing Plaintiff of his right to counsel and inadequately developing the record in Plaintiff's favor.[1]  The court addresses these allegations in turn.

## A.    The ALJ's Finding Concerning Residual Functional Capacity

In discussing and determining Plaintiff's RFC, ALJ Horne did not find Plaintiff's subjective complaints of pain to be credible, and consequently did not consider limitations caused by Plaintiff's use of a cane or his diabetes.[2]  In determining Plaintiff's credibility, ALJ Horne did not explicitly consider Plaintiff's prior work record.  Plaintiff now argues that all three exclusions are error.

An ALJ "engages in a two-step analysis" when "assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of

---

[1] Plaintiff appeared pro se before ALJ Horne, but obtained counsel for the instant appeal.

[2] Because Plaintiff fails to identify any specific limitations stemming from his diabetes, the court assumes that Plaintiff claims that his diabetes contributed to his back and hip pain. Beyond making this assumption, the court refuses to speculate as to what other conditions the diabetes could have caused.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the first

step, "the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Id.* (internal quotation marks and citations omitted).  If a

claimant's testimony is supported by objective medical evidence, he "need not

show that [his] impairment could reasonably be expected to cause the severity of

the symptom [he] has alleged; [he] need only show that it could reasonably have

caused some degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036

(9th Cir. 2007) (internal quotation marks and citations omitted).

Second, once a claimant meets the first step, "the ALJ can reject the

claimant's testimony about the severity of [his] symptoms only by offering

specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996); *see also Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th

Cir. 2014).  The ALJ is permitted to use "ordinary techniques of credibility

evaluation." *Smolen*, 80 F.3d at 1284.  These include: "inconsistencies either in

the claimant's testimony or between the testimony and the claimant's conduct;

unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and whether the claimant engages in daily activities

inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112.

9

### 1.    *Plaintiff's Use of a Cane*

Plaintiff argues that "the RFC finding is deficient as a matter of law because it fails to account for Plaintiff's need to ambulate with a cane." Pl.'s Br. at 24.  Because ALJ Horne both accounted for and adequately rejected the claimed severity of the pain causing Plaintiff's use of a cane, the court disagrees.

ALJ Horne acknowledged that Plaintiff "uses a cane now to take the pressure off of his back," which Plaintiff allegedly required because "he cannot work . . . due to back pain."  AR at 28.  ALJ Horne found that Plaintiff passed the first test, as "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  *Id.*  Moving to the second step, however, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  *Id.*

In rejecting Plaintiff's testimony about the severity of his back pain, which caused him to use a cane, ALJ Horne was required to provide "specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281.  She did just that:

> The claimant's medical record does not support his allegations
> of severe back and hip pain.  Although the claimant has sought
> treatment for this issue during the last couple of years, x-rays
> have shown little beyond the presence of mild to moderate
> degenerative changes.  The claimant's treaters have not
> suggested surgical intervention, and the record contains little

10

that would support the claimant's allegations of radicular pain or nerve impingement.  The claimant's treaters have offered physical therapy to the claimant, but he has refused, an action that suggests the claimant's pain, while real, is not totally debilitating, a conclusion further supported by the claimant's own description of his pain as "moderate."

AR at 28; *see also id.* at 424-25 (X-ray of spine and hip on February 10, 2014); *id.* at 486, 505 (declining physical therapy to help with pain on February 6 and March 12, 2014).

Plaintiff argues extensively that use of a cane must be considered when determining Plaintiff's RFC because it takes pressure off of his back.  Pl.'s Br. at 24-26.  But this puts the cart before the horse -- there is substantial evidence to support ALJ Horne's rejection of Plaintiff's stated degree of back pain, and thus the court need not reach any limitation imposed by the claimed degree of back pain, such as use of a cane.  In short, Plaintiff failed to demonstrate that he suffered from back pain requiring the use of a cane.

### 2.  *Plaintiff's Diabetes*

Plaintiff contends that his diabetes should have been determined to be severe at step two, and "must be accounted for in the ALJ's RFC finding."  Pl.'s Br. at 15.  And, these deficiencies, Plaintiff argues, require a remand.  Once again, the court disagrees.

a.      *Step Two Severity Finding*

Plaintiff first argues that "the ALJ improperly found Plaintiff's uncontrolled insulin-dependent diabetes to be non-severe" at step two.  Pl.'s Br. at 14.  At step two, the burden is on Plaintiff to show that an impairment "significantly limits [Plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c);  *see also Tackett*, 180 F.3d at 1098 (establishing it is Plaintiff's burden at step two).  Here, Plaintiff fails to allege any specific impairment or symptom from his diabetes that should have been considered severe.  *See Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981) ("Standing alone, the mere existence of functional impairment is insufficient to justify an award of benefits.  In addition, there must be proof of the impairment's disabling severity.").

Regardless of Plaintiff's ambiguous argument, there is substantial evidence in the record to support ALJ Horne's finding that Plaintiff's diabetes was no more than a minimal impediment.  *See, e.g.*, AR at 335, 350, 355, 361, 382 (noting that Plaintiff's diabetes is "improving" on five visits to health care provider between June and September 2013); *id.* at 456 (noting that Plaintiff's diabetes is "stable" and shows "great improvement" on a November 26, 2013 visit to

Plaintiff's healthcare provider); *id.* at 451 (noting that Plaintiff's diabetes is in "good control" on a January 15, 2014 visit to Plaintiff's healthcare provider).

Even assuming that ALJ Horne erred in finding Plaintiff's diabetes to be non-severe, any such error is harmless as she considered all of Plaintiff's symptoms at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

b.     *Step Four RFC Finding*

Plaintiff next argues that ALJ Horne failed to account for his diabetes in the RFC finding. But contrary to this contention, ALJ Horne *did* recognize Plaintiff's diabetes in her RFC finding. AR at 27 ("Due to his diabetes, his union has not referred any other truck driving jobs to him."). She also recognized the diabetes earlier when determining the severity of Plaintiff's impairments. *Id.* at 25 ("The claimant's record also contains evidence related to diabetes mellitus[.]"). She concluded that "[t]here is little evidence" that his diabetes "result[s] in more than [a] minimal impediment[] to the claimant's ability to perform basic work functions." *Id.*

13

Plaintiff goes to great lengths to identify all of the medical evidence proving he has diabetes, Pl.'s Br. at 14-15,[3] but ALJ Horne did not find otherwise. Although ALJ Horne does not discuss which specific symptoms flow from which specific impairment,[4] she did move to the second step and provided "specific, clear and convincing reasons," *Smolen*, 80 F.3d at 1281, for rejecting Plaintiff's allegations of severe back and hip pain.  AR at 28.

To the extent it might be possible that Plaintiff's diabetes caused a symptom that ALJ Horne did not address, Plaintiff fails to identify any such symptom.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009).  Because ALJ Horne met her duty under this two-part test, and because Plaintiff does not identify any symptom not addressed under this two-part test, Plaintiff's claim fails.

//

//

---

[3] Although Plaintiff cites multiple medical records discussing his diabetes, Pl.'s Br. at 14-15, he fails to cite his most recent diabetes-related medical records.  And although the earlier records reflect that Plaintiff's diabetes was not well controlled, the more recent records (again, which Plaintiff simply ignores) from June 2013 to January 2014 reflect his diabetes as "improving," "stable," in "good control," and showing "great improvement."  AR at 335, 350, 355, 361, 382, 426, 451, 456.

[4] "Even when an agency 'explains its decision with less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)).

### 3.     *Plaintiff's Prior Work Record*

Plaintiff next argues that ALJ Horne improperly discredited Plaintiff's testimony because she did not consider Plaintiff's "exemplary work history." Pl.'s Br. at 26-28. Again, the court disagrees.

It is unclear whether ALJ Horne was required to consider Plaintiff's "prior work record" when determining Plaintiff's credibility.[5] Assuming -- without deciding -- that she was required to consider Plaintiff's work record, the court turns to whether this error was harmless.

An ALJ's error is harmless "where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115. That is, "the relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal citations omitted) (finding valid the ALJ's

---

[5] The regulations state that the agency "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7P (stating that the agency's determination "includes, but is not limited to" evidence such as "[s]tatements and reports from the individual . . . about the individual's . . . prior work record"). Ninth Circuit precedent appears to be inconsistent on this issue. *Compare Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ *may* consider . . . his work record[.]" (emphasis added)), *with Smolen*, 80 F.3d at 1284 ("In evaluating the credibility of the symptom testimony, the ALJ *must* also consider . . . . the claimant's work record[.]" (emphasis added)).

determination that the plaintiff's testimony was not credible, despite the fact that the ALJ relied on two invalid reasons). The ALJ's decision remains legally valid "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility.'" *Id.* (quoting *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

      Here, ALJ Horne's failure to consider Plaintiff's prior work record is harmless error. Although her failure to consider prior work record is somewhat different than offering an invalid reason, they are functionally the same. That is, the posture of this issue would be no different if ALJ Horne had instead provided Plaintiff's work record as an invalid reason for disbelieving Plaintiff's testimony.

      The court concludes that ALJ Horne offered substantial evidence, supported by the record, to discredit Plaintiff's complaints and ALJ Horne's failure to address Plaintiff's work history (again, if such a finding was required) does not undermine this conclusion. *See* AR at 28-29 (identifying (1) "x-rays have shown little beyond the presence of mild to moderate degenerative changes" in Plaintiff's back; (2) the claimant's treating physicians "have not suggested surgical intervention, and the record contains little that would support the claimant's allegations of radicular pain or nerve impingement"; (3) the claimant's treating physicians also "offered physical therapy to the claimant, but he has refused, an

16

action that suggests the claimant's pain, while real, is not totally debilitating"; and (4) "the claimant's own description of his pain as 'moderate.'"). In short, ALJ Horne's decision to discredit Plaintiff's testimony "remains legally valid." *Carmickle*, 533 F.3d at 1162.

## B.      Rejection of Dr. Bratton's Opinion

Plaintiff contends that it was error for ALJ Horne to reject the opinion of Dr. Bratton -- an examining psychologist -- when determining Plaintiff's mental impairments. Pl.'s Br. at 16-23. This claim fails.

### 1.      *Standard of Review*

Generally, "[t]here are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine*, 574 F.3d at 692. In cases "[w]here a treating or examining physician's opinion is contradicted by another doctor, the 'Commissioner must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). When rejecting "a treating or examining doctor's opinion [that] is contradicted by another doctor's opinion," an ALJ must provide "specific and legitimate reasons that are supported

by substantial evidence."[6] *Bayliss*, 427 F.3d at 1216; *see also Burrell*, 775 F.3d at 1137.

When resolving this conflict, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). A contrary opinion can, however, "constitute substantial evidence when it is consistent with other independent evidence in the record." *Id.*; *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

In addition, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Tonapetyan*, 242 F.3d at 1149 (affirming ALJ's rejection of examining physician's opinion where it relied on the claimant's "subjective

---

[6] When rejecting "an *uncontradicted* opinion of a treating or examining doctor," the ALJ must provide "*clear and convincing* reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (emphasis added).

complaints and on testing within [the claimant's] control" and the ALJ properly found the claimant to be incredible).  Similarly, an ALJ may discredit an opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Burrell*, 775 F.3d at 1140 (emphasis and internal quotation marks omitted).

### 2.    *Application*

Here, Dr. Joseph Bratton was an examining physician who performed a psychological evaluation of Plaintiff on November 25, 2013, at the request of the agency.  AR at 408-13.  His opinion is clearly contradicted by the opinion of a non-examining state agency consultant, Dr. Torigoe.  *Compare* AR at 413 (showing Dr. Bratton's opinion that Plaintiff "could not presently adapt to the normal workplace psychological requirements"), *with id.* at 100 (showing Dr. Torigoe's December 2013 opinion[7] that Plaintiff "has capacity to perform simple,

---

[7] Dr. Torigoe, a non-examining state agency consultant, assessed Plaintiff's mental impairments on December 3, 2013.  AR at 88-102.  Among his several findings were that Plaintiff could "follow simple instructions and sustain concentration for short periods," "appropriately interact w[ith] general public on a limited basis," and "adjust to basic changes in work setting." *Id.* at 98-99.  He further explicitly rejected Dr. Bratton's opinion:

> The opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion.

> The opinion appears to rely on the assessment of limitations resulting from an impairment for which the source has not treated or examined the individual.

repetitive, and non-stressful work"). *See also* Pl.'s Supp. Br. at 3-4, ECF No. 28

("In this case, Plaintiff probably must concede that the opinion of Dr. Bratton is

contradicted, given the existence of the nonexamining reviewers' medical opinions

which the ALJ gave great weight to[.]").  Thus, the ALJ must justify her rejection

of Dr. Bratton's opinion with "specific and legitimate reasons that are supported by

substantial evidence." *Bayliss*, 427 F.3d at 1216.

 Although Dr. Torigoe's opinion alone is not enough to constitute

substantial evidence, it is sufficient when it is "consistent with independent clinical

findings or other evidence in the record." *Thomas*, 278 F.3d at 957; *see, e.g.*, AR

at 200-05 (Plaintiff admitting in July 2013 that he cooks, shops, bathes, dresses,

and shaves on his own without reminder and gets along with authority figures

"ok"); *id.* at 169-74 (Plaintiff's son admitting in October 2012 that Plaintiff takes

care of him, has daily conversations on the phone with family members, does not

need to be reminded to go places, follows spoken instructions, mows the lawn,

drives, and gets along "good" with authority figures); AR at 431, 446, 454 (treating

physicians' notes that Plaintiff is "[o]riented to time, place, person & situation"

---

  The CE examiner's opinion is an overestimate of the severity of the
individual's restrictions/limitations and based only on a snapshot of the
individual's functioning.

*Id.* at 100.

and has "[a]ppropriate mood and affect" during visits on January 15, March 5, and April 23, 2014).

Even without Dr. Torigoe's opinion, ALJ Horne provided specific and legitimate reasons to give Dr. Bratton's opinion "only some weight"[8] -- namely, that "[v]ery little in [Plaintiff's] medical record supports such extreme limitations beyond the claimant's subjective allegations." AR at 29. Turning to the sources Dr. Bratton considered, his notes list "medical records," "[o]bservations of [Plaintiff] in office," "[i]nterview of [Plaintiff] in office," and "[p]sychological testing." AR at 409. Yet, Dr. Bratton admits, Plaintiff "gave little medical information," and "[t]here was not a mental health providers report that supported [Plaintiff's] reported diagnosis or symptoms." AR at 409, 412. At the end of his examination, Dr. Bratton claimed that "[e]vidence available in observations and testing . . . supported all of her [sic] complaints and psychometric testing managed to bring up other, not reported psychological symptoms/diagnoses, mainly evidence that he has significant residual cognitive impairment." AR 412. But, Dr.

---

[8] Plaintiff argues that the ALJ's assignment of "some weight," AR at 29, is "impermissibly vague, as it does not give a clear indication of how the ALJ evaluated Dr. Bratton's opinion," Pl.'s Br. at 19 (citing *Varner v. Astrue*, 2011 WL 1196422, at *32 (M.D. Fla. Mar. 29, 2011)). The case Plaintiff cites for this proposition concerned an ALJ claiming to give "appropriate" weight to an opinion. *Varner*, 2011 WL 1196422, at *11. But giving an opinion "some" weight is not similarly ambiguous because it is a sufficiently descriptive amount, whereas "appropriate" could mean "some," "a lot," or even "none," depending on what the ALJ deems "appropriate."

21

Bratton's recorded observations and testing simply do not support such a conclusion.

In fact, Dr. Bratton's observations of Plaintiff appear benign: "He was always polite and cooperative, and he tried his best to meet the requirements of this examination;" "He spoke usually fairly easily, and he used adequate expressive vocabulary;" "Thoughts seemed logical and linear, with no sign of thought disorder, no delusional thinking;" "Concentration seemed to be mildly impaired;" and "Insight seemed present, if limited." AR at 410.

So did his psychological testing of Plaintiff: "The lower scores were across both verbal and nonverbal measures, all being in the *borderline* range;" "The four subtests requiring sustained concentration and attention, coding, digit span, symbol search and arithmetic, seemed lower partially due to impaired cognitive functioning;" "he had barely managed by high school to acquire *marginal adult literacy* or slightly lower reading recognition ability and word knowledge;" and "scores were *just outside* the cut off limits for normal scores, suggesting . . . that he has some kind of *mild* cognitive impairment." AR at 410-11 (emphasis added). He further concluded that Plaintiff was "suffering from moderate to severe depression" despite the fact that "[h]e never completed [the] written self report." AR at 411.

22

The court is left to conclude that Dr. Bratton's opinion "is based to a large extent on [Plaintiff's] self-reports," which, as the court finds in this case, "have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quotation marks omitted) (affirming rejection of physician's opinion).  For example, Dr. Bratton found that Plaintiff "is easily irritated, and then he can verbally explode on innocent people," without ever showing any evidence from his observations or testing to support such a conclusion.  AR at 412.  To the contrary, Dr. Bratton anecdotally observed that Plaintiff "was always polite and cooperative."  AR at 410.  Dr. Bratton further claims that Plaintiff cannot recall oral instructions or work with a supervisor, AR at 412-13, but this finding is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings."  *Burrell*, 775 F.3d at 1140.  Nowhere previously does Dr. Bratton suggest Plaintiff has difficulty following instructions or working with a supervisor, and this finding is in direct conflict with the actual observations of Plaintiff's son, AR at 169-74.

The court finds that the record supports ALJ Horne's rejection of Dr. Bratton's opinion concerning Plaintiff's mental impairments.

//

//

23

## C.     The ALJ's Duty to Develop the Record

Plaintiff further argues that his lack of counsel before ALJ Horne resulted in prejudice because ALJ Horne "fail[ed] to properly explain the role of the vocational expert or assist [Plaintiff] in asking questions of the expert."[9]  Pl.'s Br. at 9.  The court treats this allegation in two parts -- one, failing to explain the role of the vocational expert, and two, failing to assist Plaintiff in asking questions of the expert -- and disagrees with Plaintiff as to both.

### 1.     *Explaining the Role of the Vocational Expert*

In a Social Security proceeding, it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  And in cases where the claimant is not represented by counsel, "the ALJ must be especially diligent in exploring for all the relevant facts."  *Tonapetyan*, 242 F.3d at 1150.  "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect [his] own interests."  *Id.*

Plaintiff alleges that ALJ Horne failed her duty here by inadequately explaining the role of the vocational expert to Plaintiff, leading to "his asking no

_____

[9] At the October 11, 2016 hearing, Plaintiff conceded that he received adequate notice of his right to counsel, and that he waived his right to counsel.  As a result, the court does not address this argument in Plaintiff's brief.

questions of the vocational expert which plainly prejudiced him." Pl.'s Br. at 12.

It is unclear whether the ALJ's duty to develop the record fully leads to a duty to

explain the purpose of a vocational expert to Plaintiff, and Plaintiff cites no cases

to support his proposition that it does. *See id.* at 9-12. But even assuming that it

does, the court finds that ALJ Horne met her duty here.

On the issue of explaining the vocational expert's specific role, ALJ

Horne described the vocational expert's purpose before the expert testified.

Specifically, she explained:

> ALJ:  And Mr. Stock is an impartial vocational expert. He's
> going to classify your past work to kind of conform to our
> regulations, and he's also going to talk about the effect of
> certain functional limitations --
>
> [Plaintiff]:  Yeah.
>
> ALJ:  Lifting, sitting, standing, et cetera, on a person's ability to
> perform other jobs. So he'll testify later on today.
>
> [Plaintiff]:  Okay.

AR at 43-44.

After ALJ Horne questioned the vocational expert, AR at 64-70, she

turned to Plaintiff and asked: "All right, so Mr. Jose, my question to you is whether

you have any additional questions for [the vocational expert], whether there are

any limitations that you would like him to consider that I have not," *id.* at 70.

25

Once it became clear that Plaintiff did not understand the vocational expert's

testimony, ALJ Horne further explained:

> ALJ:  Yeah, let me tell you what he's testifying to, and what
> Social Security looks at.
>
> [Plaintiff]:  Yeah.
>
> ALJ:  Social Security, when they consider whether somebody is
> disabled, they're not looking at whether they can get a job.
> They're just looking at whether there are jobs.

*Id.* at 71.  ALJ Horne subsequently asked Plaintiff "is there anything else that you

want me to know," to which Plaintiff replied "No, I told you everything."  *Id.* at

71-72.

ALJ Horne posed three distinct hypotheticals to the vocational expert,

ranging from no exertional limitations to a light exertional capacity.  She explained

the role of the vocational expert and gave Plaintiff the opportunity to ask questions.

This was sufficient to satisfy the ALJ's duty to fully develop the record.

### 2.   *Assisting Plaintiff in Asking the Vocational Expert Questions*

Plaintiff further claims that ALJ Horne was required to ask additional

hypotheticals that led to a favorable result for Plaintiff, Pl.'s Br. at 10, in an effort

to "develop the arguments both for and against granting benefits," *Sims*, 530 U.S.

at 111.  The court disagrees.

26

At step five, vocational experts assist ALJs by testifying as to:

"(1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101.  To do so, the ALJ "poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Id.*  (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).  However, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.*  This is because "[t]he testimony of a vocational expert is valuable only to the extent that it is supported by medical evidence" and has "no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (citations and quotation marks omitted).

Consequently, "exclusion of some of a claimant's subjective complaints in questions to a vocational expert is not improper if the Secretary makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain." *Copeland v. Brown*, 861 F.2d 536, 540 (9th Cir. 1988); *see also Thomas*, 278 F.3d at 959 ("Without objective medical evidence that [Plaintiff] needed a cane or wheelchair, and in light of the

ALJ's findings with respect to [Plaintiff's] lack of credibility, there was no reason to include [Plaintiff's] subjective use of those devices in the hypothetical to the VE.").

Here, Plaintiff complains that "[a]t no point did the ALJ construct a hypothetical which, for instance, resulted in plaintiff's being found *unable* to engage in competitive employment." Pl.'s Br. at 10. But no such question is required. The ALJ must construct hypotheticals supported by the medical record, and is permitted to disregard Plaintiff's subjective complaints if the ALJ finds such complaints to lack credibility. *See Copeland*, 861 F.2d at 540. ALJ Horne did not find Plaintiff's complaints credible, and as a result, posed hypotheticals involving Plaintiff's RFC as determined by his medical records and the limitations that necessarily follow. AR at 30-31, 65-70.

If the ALJ finds Plaintiff's complaints to lack credibility, the ALJ must specify why. ALJ Horne did just that. AR at 28-29 (discrediting Plaintiff's subjective complaints after considering the claimant's medical record, state agency consultants, and claimant's own contradictory testimony).

ALJ Horne posed hypotheticals spanning multiple exertional limitations, fully exploring a range supported by medical evidence. She was not

required to ask additional hypotheticals after finding that Plaintiff's subjective complaints lacked credibility.

## V. **CONCLUSION**

For the multiple reasons set forth above, the Social Security Administration's denial of benefits to Plaintiff Ronald James Jose is AFFIRMED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 1, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Jose v. Colvin*, Civ. No. 16-00072 JMS-KJM, Order Affirming the Social Security Administration's Denial of Benefits to Plaintiff Ronald James Jose